So Ordered.

Dated: June 5, 2023



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | |
|---|---|
| Florine Moore, | Case No. 23-20744-rmb |
| | Chapter 7 |
| Debtor. | |

### DECISION AND ORDER GRANTING IN PART DEBTOR'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES

On April 24, 2023, debtor Florine Moore filed a letter with the Court requesting a refund of attorney's fees she paid for legal representation by her former bankruptcy counsel, Joseph Seifert, in connection with this case. ECF No. 24. The Court construed Moore's letter as a motion pursuant to 11 U.S.C.§ 329 for disgorgement of attorney's fees and set the matter for an evidentiary hearing. ECF No. 25. The Court held a hearing on May 16, 2023, during which the United States Trustee joined Moore's motion. Moore and the U.S. Trustee presented evidence on the motion, including Moore's testimony, copies of Moore's email and text message exchanges with Seifert and Upright Law, and copies of the U.S. Trustee's email exchanges with Seifert. Seifert did not appear at the hearing. At the end of the hearing, the Court concluded that the fees Moore paid to Seifert exceeded the reasonable value of the services provided, and that the reasonable value of the services was $75.00. With this decision and order, the Court expands on and memorializes its oral ruling and orders Seifert to disgorge fees in the amount of $1,387.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a). *See* Order of Reference (E.D. Wis. July 10, 1984) (available at www.wied.uscourts.gov/gen-orders/bankruptcy-matters) (last accessed June 2, 2023). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.[1]

## FACTUAL BACKGROUND

In early November 2021, Moore conducted an internet search and determined that she may want to file bankruptcy because she was facing collection efforts from several creditors. Her internet search led her to a business called Upright Law ("Upright").

Upright appears to be a law firm that is based in Chicago and works with attorneys around the country to file bankruptcy cases for consumer debtors. Other courts have discussed Upright's business structure and its relationship with attorneys like Seifert. *See, e.g.*, *Deighan Law, LLC v. Daugherty*, 615 B.R. 564 (E.D. Mo. 2020); *In re Deighan Law LLC*, 637 B.R. 888 (Bankr. M.D. Ala. 2022); *In re Banks*, No. 17-10456, 2018 WL 735351 (Bankr. W.D. La. Feb. 2, 2018). Because Seifert did not appear at the May 19 hearing, the Court has little evidence regarding the precise relationship between Upright and Seifert.

In addition to its website, Upright has a mobile application (the "App") that debtors like Moore can use to retrieve information and communicate with Upright. Moore provided screenshots from the App that showed the history of her contacts with Upright. The screenshots

---

[1] The Court draws its factual findings from the evidence presented at the May 16 hearing and from information available on this case's docket. *See DuCanto v. Fleck, LLP (In re Potter)*, 616 B.R. 745, 749 n.3 (Bankr. N.D. Ill. 2020) ("A bankruptcy court can take judicial notice of its own docket.").

indicate that Moore first contacted Upright on November 5, 2021, and that someone referred to as "Ejennings" with a label of "Staff" conducted "[i]nitial intake consulting" that day. ECF No. 30-1 at 29. On November 8, 2021, Moore received a message through the App saying that "Your case has been reviewed by our associate attorney. Everything looks good so far!" *Id.* at 41. The same day, someone referred to as "Csyoung" with a label of "Associate" "[r]eviewed and approved case" and sent a "retention agreement" to Moore. *Id.* at 29.

On November 9, 2021 someone referred to as "John McCombs" with a label of "Staff" conducted a "Compliance/Approval Call." *Id.* Moore recalled that she did speak with someone from Upright by telephone as part of her initial contact with the company. She was unsure whether that person was an attorney or what day the call occurred. Moore did recall that, based on this initial conversation, it was determined that Moore would file a chapter 7 bankruptcy case. Moore said she was not told why that determination was made, and she testified that she did not receive information or counseling regarding the benefits of filing chapter 7 instead chapter 13 (or no bankruptcy at all).

After that conversation, Moore electronically signed an Attorney-Client Legal Services Agreement for Chapter 7 Bankruptcy (the "Agreement"). ECF No. 30-9. The Agreement was between Moore and "Upright Law." Seifert signed the Agreement on behalf of Upright Law. Curiously, the Agreement is dated November 5, 2021, even though the screenshots from the App indicate that the Agreement was not sent to Moore until November 8. ECF No. 30-1 at 29; ECF No. 30-9 at 2.

The App indicates that Seifert "[r]eviewed and approved case" on November 9, 2021, after the Agreement was sent to Moore. ECF No. 30-1 at 29. The same day, Moore received a message through the App that states, "Please call your attorney Joseph Seifert . . . .  It is

3

important to complete this attorney call before we move your case to the next step." ECF No. 30-1 at 40. Moore testified that she did have a brief telephone call with Seifert very soon after she received his information in the App. Moore then received another message in the App that states, "Your attorney confirmed our legal representation of you." ECF No. 30-1 at 39. One wonders why Moore was sent the Agreement before Seifert even agreed to take her on as a client, but that particular detail is not relevant to the motion at issue.

Under the Agreement, Upright and Seifert agreed to provide bankruptcy-related legal services for a flat fee of $1,800. ECF No. 30-9 at 1. Of that amount, $338 would be used for the court filing fee. The remainder of $1,462 represented the fee for legal services. The Agreement provides that the legal representation will be "primarily through means of telephonic and online communication via email, phone, or computer-based virtual meeting room, and not face-to-face at a physical office." *Id.* at 2. But Moore had "the right to meet with [Seifert] in person at a mutually agreeable time and location." *Id.*

Moore could not pay the full $1,800 in November 2021, so she entered into a payment plan with Upright whereby Upright would deduct a set amount from her bank account each month until the fee was paid. Moore understood that neither Upright nor Seifert would begin work on her case until the fee was paid in full.

By June of 2022, Moore was facing mounting pressure from her creditors. On June 1, 2022, she wrote to Upright, "There is a lawsuit filed against me. . . . I am ready to put this stressful situation behind me." ECF No. 30-1 at 10. On June 8, 2022, Moore wrote to Upright, "If I can pay the full amount tomorrow, what happens then? Do you start the petition process?" Upright responded, "Upon the balance being completed, you will get the next steps via email and yes the attorney will start the petition work." *Id.* at 11. Moore then instructed Upright to deduct

4

the remaining balance of $899.98 from her bank account. *Id.* at 12. The same day, she took the required pre-petition credit counseling course and paid $10 for the course.

The App indicates that on June 9, 2022, someone referred to as "Rachel Williams" with a label of "Associate" "Updated case file information," "Obtained credit report," and "Initiated bankruptcy petition." ECF No. 30-1 at 32. It is unclear whether Williams is an attorney, but neither Moore's testimony nor any of the documents in the record suggest that Williams provided Moore with legal advice or guidance.

The screenshots from the App reflect several contacts between Moore and Upright over the next several months, which are likely the text conversations recounted below. ECF No. 30-1 at 32-34. According to the App, Seifert did not perform work on Moore's case until November 2, 2022. On November 2, November 14, and November 18, Seifert performed "Document Collection." *Id.* at 34. On November 28, 2022, Seifert's entry states, "Work completed on bankruptcy petition." It is unclear whether Seifert did any work to prepare Moore's bankruptcy petition between June and November 2022. Moore's correspondence with both Seifert and Upright suggests that he did not.

In mid-June, several days after she had paid the fee in full, Moore had not been contacted by Seifert or any other attorney to file her bankruptcy petition.[2] She asked Upright, "Is this a slow process? I have gathered the information needed, but no call from the attorney?" Upright responded, "The attorney has had a very hectic schedule and is working on finishing multiple cases. They will be attending to you soon. We appreciate the patience." ECF No. 30-1 at 13. Moore would receive a version of this canned response many times over the next several months.

---

[2] The screenshot Moore provided for this conversation does not include the date, but it occurred between conversations on June 8 and June 30, which are the dates on the screenshots before and after this screenshot.

On June 30, Moore asked, "How soon is soon?" Upright responded, "They will most likely be in touch after the [July 4] holiday." *Id.* at 14.

Moore then tried to reach out directly to Seifert and tried to send him some documents. She received no response. On July 25, she wrote again to Upright Law. "Did the attorney receive the documents I sent to his email? I haven't received a response from him yet." Upright responded, "You will have to check wit[h] them directly." ECF No. 30-1 at 15.

On September 20, Moore still had not heard from Seifert. She wrote to Upright, "Still no call from the attorney. Where is his office located?" In response, Upright provided Seifert's Milwaukee office address and again said, "The attorney is working through a heavy caseload. We look forward to helping you finish this process as soon as possible." ECF No. 30-1 at 26.

Finally, on October 25, 2022, over four months after she had expected him to begin work on her case, Moore received an email from Seifert. He said that he had a "backlog of cases" but was ready to "get these cases filed as soon as practical." He attached a long questionnaire and directed that it "MUST BE COMPLETED FULLY." He sent a list of documents that would be needed, and he instructed that "[e]ach document must be in its own singe PDF FILE as an original scan." ECF 30-2 at 4-5. Moore testified that she filled out the questionnaire right away. Many of the fields were confusing to her, but she said she provided the information to the best of her ability. She also provided the documents Seifert requested to the best of her ability. She testified that she had to enlist the help of a generous librarian to assist her with scanning the documents in the exact format Seifert requested. The record indicates that Moore requested several times that she be permitted to just drop off the documents because she was having difficulty scanning and emailing them. Seifert did not respond to these requests.

6

On October 25, Moore sent Seifert several of the documents he had requested. ECF No. 30-6 at 1. Seifert did not respond. On October 28, Moore sent another message, "Did you receive the documents?" *Id.* On November 1, Moore became concerned that she still had not received a response and wrote, "MY CREDIT COUNSELING CERTIFICATE IS GETTING READY TO EXPIRE." *Id.* Seifert finally responded on November 2. He said, "Your credit counseling certificate is good until December 8. We will file this month so we do not have to worry about it." *Id.* He also asked her to re-send the completed questionnaire.

On November 9, 2022, Moore wrote to Seifert, "Garnishment!!! Mariner finance took 464.00 dollars! Is it your plan to help me or not? I am so stressed!" ECF No. 30-5 at 2. The same day, in a separate message, she wrote, "I'm also getting ready to be sued by One main financial. I need my job. Help me!" *Id.* On November 14, Moore wrote, "Questionare[sic]? Did you receive it?" *Id.* at 1. Seifert finally responded later in the day on November 14. He said, "I have received the same incomplete questionnaire on three occasions. All of the questions must be fully answered." *Id.*

On November 15, 2022, Moore again sent the questionnaire. She told Seifert that she had completed the questions "to the best of my ability" and that she had placed question marks next to the information she was having trouble providing. ECF No. 30-3 at 2. Rather than helping Moore understand what information was still needed and how to obtain it, Seifert scolded Moore in response. He said, "You failed to answer many questions," and pointed out several items that were missing. He did not give her any direction, and instead said "Please review the questionnaire and complete it. I cannot complete your schedules without the required information." *Id*. Moore responded that she had not completed everything on the form because "I'm really not understanding this form of questions . . . . If you can schedule a meeting with me

7

so that I can tell you what you need to know and write it in the places needed that will be great. I will go back and try to fully complete this again." *Id.* Seifert did not respond to her request for a meeting.

Moore filled in more information on the questionnaire and tried sending it to Seifert again. He did not respond. On November 23, she complained that she had sent the information "again and again." She asked, "What can you do to stop these garnishments? What else do you need from me and when do you plan on filing my case?" ECF No. 30-1 at 49.

On December 5, Moore wrote to Upright, "My credit counseling certificate expires on the 8th of this month, Thursday to be exact. When will my case be filed?" She also told Upright that she had "left a message on the phone and email, asking if [Seifert] received the documents. Please contact him and ask him if he received it. Time is running out!" ECF No. 30-1 at 23-24.

On December 6, Moore wrote to Upright, "I sent the documents he asked for on the 30th of November. Contact the Attorney again please and thanks!" The next day Upright responded, "They are working through a heavy case load but have every intention to get you filed. We appreciate your patience and they should be in touch soon." ECF No. 30-1 at 21. Moore became so frustrated at the delay that she asked for a refund. *Id.* Moore did not receive a refund, and Moore did not provide any testimony as to what happened with her request.

On January 25, 2023, Moore still had not received a response from Seifert. She wrote to Upright, "No response yet." Upright responded, "The attorney has had a very hectic schedule and is working on finishing multiple cases. They will be attending to you soon. We appreciate the patience." ECF No. 30-1 at 16.

Moore's petition was finally filed on February 23, 2023. Moore testified that neither Seifert nor any attorney in his office went over the petition and schedules with her before they were filed. She said that Seifert simply sent them to her and asked her to review and sign them.

With the petition, Seifert filed Official Form 2030 Disclosure of Compensation of Attorney for Debtor, which is a form required by 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b). ECF No. 1 at 50. The form indicates that Seifert received a fee of $1,462 for "[a]ll services . . . that are reasonably contemplated to achieve the debtor's bankruptcy objectives." The form includes a list of services that would be part of the fee.

In January 2023, before the petition was filed, Moore filed a grievance with the Wisconsin Office of Lawyer Regulation ("OLR"). On March 11, 2023, Seifert received a letter from the OLR regarding the grievance. He wrote to Moore that, in light of the pending grievance, "we can no longer represent you in any matters, including the bankruptcy case that we filed on your behalf. If you will be looking for a new bankruptcy attorney you should have one hired prior to your 341 Creditor's Hearing scheduled for March 21 unless you plan on proceeding without an attorney. If you do not appear, your case will be dismissed." ECF No. 30-6 at 2. As discussed below, this communication was inappropriate and inaccurate to the extent it suggested that Seifert had no responsibility to represent Moore at the meeting of creditors.

On March 14, 2023, Seifert filed a document titled "Request to Withdraw" in which he requested that the Court "remove him as attorney of record for the Debtor." ECF No. 8. The "Request to Withdraw" did not comply with Local Rules 9010(a)(1) or 9014. The Court sent a notice to Seifert regarding the deficient document on March 15, and a second notice on March 20. ECF Nos. 9, 10. On March 20, Seifert filed a motion to withdraw as counsel that complied with the applicable rules. ECF No. 11.

9

An attorney in Seifert's office appeared with Moore at the § 341 meeting of creditors on March 21. Moore testified that she received no instruction or preparation for the meeting from Seifert or anyone in his office. She did not even know that an attorney would attend the meeting until he spoke on the telephone. During the § 341 meeting, the chapter 7 trustee raised some issues with Moore's schedules and suggested that they be amended to correct inaccuracies he identified.[3]

On March 24, 2023, counsel for the U.S. Trustee sent Seifert an email with a series of questions regarding Moore's bankruptcy schedules. ECF No. 30-6 at 4. Counsel for the U.S. Trustee rightly noted that "until the motion [to withdraw] is granted you are the attorney of record." *Id.* Even though the Court had not yet granted his motion to withdraw, Seifert did not respond to the U.S. Trustee's inquiry or counsel Moore regarding how to respond. He simply forwarded the email to Moore saying, "Please see the following that I have received from the U.S. Trustee." *Id.*

Moore objected to Seifert's motion to withdraw, and the Court held a hearing on April 19. At the hearing, Seifert explained that Moore had filed a grievance with OLR, and the Court granted the motion based on the conflict that the grievance created. ECF No. 19. The Court reserved the issue whether Moore would be entitled to a refund of any fees paid to Seifert.

On April 24, 2023, Moore filed a letter requesting a full refund of the fees she paid to Seifert, which the Court construed as a motion to disgorge fees under 11 U.S.C. § 329(b). ECF No. 24. The Court set a hearing on the motion, and the Court attached Moore's letter to the notice of the hearing. ECF No. 25. As a result of his withdrawal, Seifert no longer receives ECF

---

[3] To date neither t chapter 7 trustee nor the U.S. Trustee has taken any action with respect to any inaccuracies in the schedules.

notices from the Court. The Bankruptcy Noticing Center sent the notice of hearing, with Moore's letter, to Seifert letter by U.S. Mail. ECF No. 27. The address used by the BNC for Seifert is the same address that appears on Moore's petition and that is on Seifert's registration for the Court's ECF system. ECF No. 1 at 7, 51.

The Court held a hearing on Moore's motion on May 19, 2023. Seifert did not appear at the hearing. During the hearing, Moore testified regarding the facts recounted above. She also testified that she received no counseling from Seifert, or anyone from his office, regarding whether she should file a chapter 7 or chapter 13 case (or any bankruptcy case at all), the effect of the bankruptcy on her various debts (including some tax debts), the amended schedules requested by the chapter 7 trustee, or the procedure for entering into reaffirmation agreements with creditors that held liens on two vehicles.

As further evidence in support of Moore's motion, the U.S. Trustee submitted an email exchange that counsel for the U.S. Trustee had with Seifert. ECF No. 31. In this email exchange, Seifert disclaimed any responsibility to provide pre-bankruptcy counseling to Moore. He said that Moore "was originally assigned another attorney with Upright Law and she discussed this matter [whether to file chapter 7 or chapter 13] with Upright Law employees long before I received her case." *Id.* at 4. The Court finds this statement to be not credible. The information from the App discussed above clearly indicates that Moore's case was "assigned" to Seifert within four days after she first contacted Upright, that no other attorney was "assigned" to Moore's case, and that Seifert signed the Agreement with Moore. For this reason, the Court has not accepted as true many of Seifert's other statements in his emails to counsel for the U.S. Trustee.

11

In the email exchange, counsel for the U.S. Trustee asked Seifert several questions regarding his representation of Moore. Seifert responded that his "job was to collect the documents and information, file the petitions and prepare for the § 341 Hearing." *Id.* at 3. He blamed Moore for the delays in filing her case, accusing her of providing incomplete information. *Id.* at 3-5. He also provided a "partial summary of events regarding Ms. Moore and my office." *Id.* at 5-6. Notably, the first date in the list is October 11, 2022, four months after Moore expected Seifert to begin work on her case. Seifert also claimed that Moore had engaged Upright as her counsel, not Seifert, and that he had no knowledge regarding the details of the engagement, he did not have a copy of the Agreement, and he did not receive any payment from Moore.

## DISCUSSION

Section 329 of the Bankruptcy Code requires that "[a]ny attorney representing a debtor in a case under [the Bankruptcy Code] . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered by such attorney." 11 U.S.C. § 329(a). If the court finds that the compensation paid to a debtor's attorney "exceeds the reasonable value of any such services," the court can "order the return of any such payment." 11 U.S.C. § 329(b); *see also In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998).

"What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case." 3 Collier on Bankruptcy ¶ 329.04 (16th 2023). But in every case, "an attorney has an affirmative duty to meet with his or her clients, to counsel those clients regarding the legal significance of their actions and to answer any questions or concerns which the clients may raise." *In re Dalton*, 95 B.R. 857, 859 (Bankr. M.D. Ga. 1989). The factors set out in 11 U.S.C. § 330 should also guide the Court's decision. *Geraci*, 138 F.3d at 318.

12

Counsel for a debtor must, at a minimum, provide advice regarding the effect of a bankruptcy. "'A bankruptcy lawyer cannot assume that a client knows what a bankruptcy will or will not do for her[;]' that is why the advice of bankruptcy lawyers is sought." *In re Kincaid*, No. 19-70433, 2021 WL 5858895, at *24 (Bankr. C.D. Ill. Dec. 9, 2021) (quoting *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 189 (Bankr. D. Nev. 2013)). A debtor's counsel must also guide the debtor through the process of filling out the petition and the required statements and schedules because "the attorney is the expert and cannot rely upon a client's limited understanding of what constitutes 'complete' or 'necessary' information[.]" *Seare*, 493 B.R. at 211. In addition, the negotiation of reaffirmation agreements is "among a set of core services that must be provided to a consumer debtor in order to provide competent representation in a Chapter 7 context." *In re Minardi*, 399 B.R. 841, 849 (Bankr. N.D. Okla. 2009) (collecting cases).

"Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *Geraci*, 138 F.3d at 318 (citations omitted). Seifert raised no objection to Moore's motion for disgorgement and did not appear at the hearing on Moore's motion. For this reason alone, the Court can find that Seifert failed to sustain his burden to establish that his fee was reasonable. The evidence submitted by Moore and the U.S. Trustee confirms that Seifert's fee was unreasonable for the services that were provided to Moore.

Moore paid the fees owed to Upright and Seifert on June 9, 2022. It took over *four months* for Seifert to provide Moore with a "questionnaire" so that she could start to provide the information necessary for her bankruptcy petition and schedules. Seifert knew as early as November 9, 2021 that Moore wanted to file bankruptcy. That it took him several months to start work on her case is unreasonable.

After Seifert provided the "questionnaire," he did little to guide or assist her in filling it out. Instead, he repeatedly told her that it was incomplete. What additional information was required? Where should Moore look for that information? Seifert should have given more instruction to Moore, especially after she tried multiple times to provide the information he wanted. As the lawyer, Seifert is (or is supposed to be) the expert in gathering the necessary information. This was Moore's first bankruptcy. She clearly needed help that Seifert failed to provide.

Moore began providing what she thought was complete information to Seifert in late October 2022 soon after she received his October 25 email. It took another four months for Seifert to complete the schedules and file the bankruptcy. In the meantime, Moore suffered significant consequences from the delay. Her wages were garnished by at least one creditor whose debt she wanted to discharge, and she was on the receiving end of collection efforts from other creditors. Had Seifert timely attended to Moore's case, the bankruptcy could have been filed much sooner, as Moore wanted, and it's possible she may have been able to avoid some of the lawsuits and garnishments.

Seifert's emails to the U.S. Trustee suggest that it was Moore, not Seifert, who delayed the filing. *See* ECF No. 31. As discussed above, the Court doubts the veracity of Seifert's statements. The Court finds credible Moore's testimony that she diligently provided documents and information to the best of her ability.

The documents in the record support the Court's finding regarding Moore's diligence. Moore first obtained the necessary pre-petition credit counseling on June 8, 2022, the same day she initiated the last payment to Upright. When that certificate expired, Moore immediately took the course again on December 8, 2022. *See* ECF No. 3. Moore also followed up with Upright and

Seifert often, repeatedly telling them that she wanted to proceed with a bankruptcy petition. When Seifert finally sent her the questionnaire, Moore completed and returned it right away. She also spent hours at the library scanning documents so they were in the format Seifert demanded. When Seifert told her the questionnaire was incomplete, she responded almost immediately, trying to provide more information. Moore may not have provided complete information, but again, the lawyer is the expert, not the client. As the lawyer, Seifert should have explained what information was required, particularly after Moore repeatedly expressed her desire to file the case as soon as possible.

In addition to the severe delays, the services Seifert provided fell far below what is required. Moore testified that Seifert did not explain the benefits or consequences of filing a chapter 7 bankruptcy. It seems that Seifert may have relied on someone else at Upright to do that. But Seifert was the attorney of record. As such, he bore the responsibility to ensure that Moore received appropriate legal counsel.

Seifert also did not review Moore's schedules with her or explain the significance of the information included on the schedules. Moore testified that Seifert sent her the completed schedules for her to review and sign, but he did not explain them to her or discuss them with her in a manner that both Seifert and Moore could ensure that they were complete and accurate.[4] This resulted in the chapter 7 trustee finding potential inaccuracies at the § 341 meeting and requesting that the schedules be amended. Seifert took no action to amend the schedules, even

---

[4] Seifert told the U.S. Trustee that he discussed the petition and schedules with Moore over the phone and that he answered her questions. ECF No. 31 at 4. In the same email, however, Seifert said that Moore worked with Jude Witkowski, a paralegal, to go over her petition and schedules. *Id.* at 6. Moore testified that she did speak with a paralegal in Seifert's office several times but that she did not speak with an attorney about her schedules. The Court finds Moore's testimony to be credible, and therefore finds that neither Seifert nor an attorney in his office went over the schedules with Moore.

though his fee was to include "[a]mend[ing] any list, schedule, statement, and/or other document required to be filed with the petition as may be necessary or appropriate." ECF No. 1 at 50.

Seifert had little contact with Moore after the case was filed. When he learned of the OLR complaint on March 11, Seifert immediately told Moore that he could not represent her at the § 341 meeting of creditors on March 21. ECF No. 30-6 at 2. This was directly contrary to this Court's Local Rules and Seifert's ethical obligations. *See* Local Rule 9010(a)(1) (requiring a motion and 14 days' notice for counsel to withdraw in the absence of successor counsel); WI SCR 20:1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation."). Seifert was required to continue his representation until the Court permitted him to withdraw. An attorney with Seifert's office did attend the § 341 meeting, but no one told Moore that an attorney would attend with her and no one prepared Moore for the meeting, or even so much as confirmed with her the telephone number that she should call.

Moore's schedules indicate that she intends to retain two vehicles and enter into reaffirmation agreements with the creditors whose claims are secured by those vehicles. Seifert took no steps to pursue those reaffirmation agreements, but his fee included "[a]dvise the debtor with respect to any reaffirmation agreement; negotiate, prepare and file reaffirmation agreements if in the best interest of the debtor; and attend all hearings scheduled on any reaffirmation agreement signed by the debtor." ECF No. 1 at 50.

Based on the above, the Court finds Seifert's representation fell short of what is expected from debtor's counsel in this district. Seifert did not provide guidance or legal advice regarding Moore's decision to file bankruptcy. Indeed, he specifically disclaimed any responsibility to do so. *See* ECF No. 31 at 4. Other than providing a form questionnaire and repeatedly telling Moore

she had filled it out incompletely or incorrectly, he did not provide guidance or legal advice regarding the information that needed to be collected. Seifert did not provide guidance or legal advice regarding the information ultimately included on the bankruptcy petition and schedules. Seifert did not provide guidance or legal advice regarding the meeting of creditors, and Moore did not even know until she was on the telephone with the chapter 7 trustee that an attorney from Seifert's office would be present. Seifert did not provide guidance or legal advice regarding the amendments to the bankruptcy schedules that the chapter 7 trustee said may be necessary. And Seifert did not provide any guidance, legal advice, or other services related to the reaffirmation agreements that Moore wanted to pursue for the vehicles she intended to retain.

What Seifert did do was collect information from Moore and fill out her petition and schedules. These are in essence the services performed by bankruptcy petition preparers under 11 U.S.C. § 110. Petition preparers "may not practice law or give legal advice," 11 U.S.C. § 110(b)(2)(B)(i), because they are "fundamentally just typists." *In re Amstutz*, 427 B.R. 636, 641 (Bankr. N.D. Ohio 2010). Seifert provided little or no legal advice to Moore and was fundamentally just a typist for her petition and schedules. In the Eastern District of Wisconsin, petition preparers normally may not charge a debtor more than $75 for their services. *See* Notice of Fee Cap for Petition Preparers (Bankr. E.D. Wis. Jan. 1, 2012) (available at https://www.wieb.uscourts.gov/news/notice-fee-cap-petition-preparers-effective-january-1-2012) (last accessed June 2, 2023). The Court finds that the reasonable value of the services that Seifert provided was $75 and that all fees charged by Seifert in excess of this amount are unreasonable.

In his email exchange with the U.S. Trustee, Seifert claimed that he received no fees directly from Moore, and that he received compensation for this case only as an employee of Upright. But Seifert cannot evade his responsibility for or the consequences of § 329 by claiming

that he personally did not receive the full fee charged to the debtor. That section requires an "attorney" representing a debtor to file a statement of the compensation paid by the debtor for services rendered or to be rendered "by such attorney." 11 U.S.C. § 329(a). Consistent with this obligation, Seifert filed Form 2030. *See* ECF No. 1 at 50. The form states that "compensation paid *to me*" was $1,462. ECF No. 1 at 50 (emphasis added). Seifert also provided the following certification: "I certify that the foregoing is a complete statement of any agreement or arrangement for *payment to me* for representation of the debtor(s) in this bankruptcy proceeding." *Id.* at 51 (emphasis added). The statute and Form 2030 render Seifert liable for the fees that exceed the reasonable value of the services provided to Moore. It is also relevant that Seifert signed the Agreement with Moore.

Again, Seifert was the attorney of record. He was responsible for ensuring that the fees paid by Moore were reasonable under 11 U.S.C. § 329. Seifert chose not to attend the May 19 hearing to present evidence on this issue.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Moore's motion to disgorge fees is GRANTED in part.

IT IS FURTHER ORDERED that Seifert must return the sum of $1,387 to Moore on or before **June 26, 2023**.

# # # # #